IRVING, J.,
 

 for the Court.
 

 ¶ 1. Victor Perryman was convicted in the Copiah County Circuit Court of car
 
 *43
 
 jacking and aggravated assault. He was sentenced as a habitual offender to serve thirty years on the carjacking charge and twenty years on the aggravated assault charge, with the sentences to run consecutively in the custody of the Mississippi Department of Corrections. Aggrieved, Perryman appeals and asserts: (1) that the indictment was fatally defective for failing to state a statutory element of carjacking, (2) that the jury instructions lacked a statutory element of carjacking, (3) that his defense counsel was ineffective for requesting an erroneous elemental jury instruction for the carjacking charge, (4) that the sentence for carjacking was illegal, and (5) that the verdict on the aggravated assault charge was contrary to the weight of evidence.
 

 ¶ 2. We affirm Perryman’s conviction on both counts and his sentence in count two. However, we modify the sentencing order of the circuit court as to count one to reflect that Perry is fined $5,000 and sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with both sentences to run consecutively.
 

 FACTS
 

 ¶ 3. On March 22, 2007, Latoya Dente, an employee with the Hinds County Sheriffs Department, returned to her home in Copiah County around 6:00 a.m. to retrieve her duty belt. After Dente pulled into her driveway and got out of her truck, she heard Perryman call her name. She recognized him from the neighborhood. Perryman introduced himself to Dente and asked her if she had any job applications on hand for the sheriffs department. She replied that she did not but informed Per-ryman that she would leave an application for him at his sister’s apartment, which was located in the Cumberland Apartments.
 

 ¶ 4. After Dente explained to Perryman that she needed to get to work, he left. She went into her home, retrieved her duty belt and radio, and got back in her truck. Just as she pulled on to the road, her compact discs fell to the floor. As she slowed down to retrieve them, Perryman opened her door and jumped in on top of her. The two tussled, and Perryman cut Dente’s throat with a sharp metal object. Dente managed to get out of her vehicle, and Perryman took off in it. As she watched her truck being driven away, Dente remembered that she was wearing her duty belt. She took her gun out and fired shots at the truck. She hit one of the tires, causing it to go flat. Perryman lost control of the vehicle, struck a few mailboxes, and ran off the road into a ditch. However, he managed to get the truck back on the road and continued to drive away. At this point, Dente noticed that the truck had begun to make a very distinct and loud noise. She watched her truck travel down the street and turn toward the Cumberland Apartments.
 
 [1]
 

 ¶ 5. Although injured, Dente managed to walk to her aunt’s house to call the police and to seek medical attention. While Dente was calling the police, she and her aunt heard the distinct loud noise that Dente had heard earlier. They had a clear view of the Cumberland Apartments from her aunt’s house, and both of them saw the top of Dente’s truck at the apartment complex. A short while after the loud noise had ceased, Dente and her aunt saw Per-ryman walking down a path. At that time he had on different clothes. Next, they saw Perryman’s cousin pull up to Perry-man’s sister’s apartment and watched Per-ryman and his cousin walk into the apartment. An eyewitness that lived in the Cumberland Apartments testified that she
 
 *44
 
 saw Perryman get out of the truck, take off his shirt, and wipe down the steering wheel and the doors.
 

 ¶ 6. When the police arrived at Dente’s aunt’s house, they took a statement from Dente and then called for an ambulance to transport her to the hospital for treatment of her neck injury. Before the ambulance arrived, the police were able to apprehend Perryman. Dente positively identified him at the scene and later at the police station.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 7. Perryman’s first three contentions of error are: (1) that the indictment was fatally defective for failing to state a statutory element of carjacking, (2) that the jury instruction lacked a statutory element of carjacking, and (3) that his defense counsel was ineffective for requesting an erroneous elemental jury instruction for carjacking. Specifically, Perryman asserts that the indictment and the jury instruction do not contain all of the statutory eléments of carjacking. It should be noted that the pertinent language in the indictment and in the jury instruction is almost identical. Each of the above contentions of error center around one question — whether the language used in the indictment and in the jury instruction is sufficient to cover all of the statutory elements of carjacking. We find that it is.
 

 ¶ 8. It is well settled that “[t]he question of whether an indictment is" fatally defective is an issue of law and deserves a relatively broad standard of review by [the appellate court].”
 
 Spears v. State,
 
 942 So.2d 772, 773(¶ 5) (Miss.2006) (quoting
 
 Peterson v. State,
 
 671 So.2d 647, 652 (Miss.1996) (superseded by statute)). Questions of law are reviewed de novo.
 
 Tucker v. Hinds County,
 
 558 So.2d 869, 872 (Miss.1990) (citing
 
 UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.,
 
 525 So.2d 746, 754 (Miss.1987)).
 

 ¶ 9. In regard to jury instructions, it is well settled that “[w]e will not find reversible error ‘where the instructions actually given, when read together as a whole, fairly announce the law of the case and create no injustice.’ ”
 
 Chinn v. State,
 
 958 So.2d 1223, 1225(¶ 12) (Miss.2007) (quoting
 
 Adkins v. Sanders,
 
 871 So.2d 732, 736(¶ 9) (Miss.2004)). Further, the failure to properly instruct the jury on every essential element of the crime denies a defendant due process.
 
 Shaffer v. State,
 
 740 So.2d 273, 282(¶ 31) (Miss.1998).
 

 ¶ 10. The language of Perryman’s indictment states, in pertinent part, that:
 

 Victory [sic] Perryman ... on or about the 22nd day of [March], 2007, in Copiah County, Mississippi, and within the jurisdiction of this court did wilfully, unlawfully, feloniously and knowingly by force or violence take actual possession of one [Honda] Passport from Latoya Dent [sic], the actual owner thereof.
 

 ¶ 11. The language of jury instruction number four that was given at Perryman’s trial states in pertinent part:
 

 If you, the jury find from the evidence in this case beyond a reasonable doubt that:
 

 1. Victor Perryman, on or about the March 22, 2007, in Copiah County, Mississippi;
 

 2. Did knowingly or recklessly, by force or violence
 

 3. Take actual possession of a [Honda] Passport from Latoya Dente, the actual owner thereof....
 

 ¶ 12. Mississippi Code Annotated section 97-3-117(1) (Rev.2006) provides:
 

 Whoever shall knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy sei
 
 *45
 
 zure or snatching, or by putting in fear or attempting to do so, or by any other means shall take a motor vehicle from another person’s immediate actual possession shall be guilty of carjacking.
 

 ¶ 13. Perryman points out that his indictment and jury instruction lacked the specific statutory language “from another person’s immediate actual possession.” He argues that because of this missing language, he was not put on notice of the charge of carjacking; rather, he was put on notice for the crime of larceny. Perry-man further argues that the indictment and the jury instruction are ambiguous because they can be read to suggest that either violent force was used against the vehicle or that violent force was used against Dente.
 

 ¶ 14. In
 
 Williams v. State,
 
 772 So.2d 406, 407(¶ 1) (Miss.Ct.App.2000), the defendant was convicted of armed carjacking. On appeal, he argued that the indictment was defective and, for several reasons, did not put him on notice of
 
 aimed,
 
 carjacking.
 
 Id.
 
 First, he argued that the indictment did not follow the language used to define the elements of armed carjacking in that “it did not contain the language ‘or by any other means
 
 sliall take a motor vehicle from another person’s immediate actual possession.’
 
 ”
 
 Id.
 
 at 408(¶ 7) (emphasis added). Second, he argued that the indictment was defective because it did not contain “the words a ‘dangerous and deadly weapon capable of inflicting serious bodily harm.’ ”
 
 Id.
 
 This Court agreed that the indictment failed to charge armed carjacking.
 
 Id.
 
 at (¶ 10). However, we held that the indictment did charge carjacking. The relevant portion of the indictment in
 
 Williams
 
 reads:
 

 did recklessly and knowingly by force or violence, by the exhibition of a knife, take a motor vehicle from Farrah Goodman.
 

 Id.
 

 ¶ 15. As stated, Perryman’s indictment contains the following language:
 

 did wilfully, unlawfully, feloniously and knowingly by force or violence take actual possession of one [Honda] Passport from Latoya Dent [sic], the actual owner thereof.
 

 Here, Perryman, as did the defendant in
 
 Williams,
 
 argues that his indictment is defective because it does not contain the language that the vehicle was taken
 
 “from another person’s immediate possession.”
 
 Although the technical words “from a person’s immediate actual possession” were not used in the
 
 Williams
 
 indictment, we held that the language “from Farrah Goodman” is equivalent to the statutory language “from a person’s immediate actual possession.”
 
 Id.
 
 at 409(¶ 13). Therefore, we find that the language in Perry-man’s indictment “from Latoya Dent[e]” is also equivalent to the statutory language “from another person’s immediate actual possession.”
 

 ¶ 16. As mentioned above, Perryman’s first three contentions of error center around the sufficiency of the language in the indictment and jury instruction. Further, in his third contention of error, Per-ryman asserts that his defense counsel was ineffective for submitting the jury instruction. However, we find the language sufficient to include all of the essential statutory elements of the crime of carjacking. Therefore, we find that these three contentions of error are without merit.
 

 ¶ 17. Next, Perryman contends that his thirty-year sentence for carjacking exceeds the maximum statutory sentence and is, therefore, illegal. We agree. “Sentencing is within the complete discretion of the trial court and not subject to
 
 *46
 
 appellate review if it is within the limits prescribed by statute.”
 
 Isom v. State,
 
 928 So.2d 840, 850(¶41) (Miss.2006) (quoting
 
 Wall v. State,
 
 718 So.2d 1107, 1114(¶ 29) (Miss.1998)). “A person who is convicted of carjacking shall be fined not more than Five Thousand Dollars ($5,000.00) and be committed to the custody of the State Department of Corrections for
 
 not more than fifteen (15) years.”
 
 Miss.Code Ann. § 97-3-117(l)(a) (Rev.2006) (emphasis added).
 

 ¶ 18. The right to be free from an illegal sentence has been found to be a fundamental right of the defendant.
 
 Sneed v. State,
 
 722 So.2d 1255, 1257(¶ 11) (Miss.1998). Since Perryman was convicted as a habitual offender of carjacking, the trial judge was required to sentence him “to the maximum term of imprisonment prescribed for such felony.” Miss.Code Ann. § 99-19-81 (Rev.2007). As stated, the maximum sentence for carjacking is a fine of $5,000 and fifteen years in the custody of the Mississippi Department of Corrections. While sentencing is the prerogative of our trial courts, we see no reason in this case to remand for resentencing since the trial court has no discretion to sentence Perryman to anything less than the maximum sentence allowed by statute. Therefore, in the interest of judicial economy, we modify the sentencing order of the circuit court to reflect that, for Perryman’s conviction of count one, carjacking, he is fined $5,000 and sentenced to fifteen years in the custody of the Mississippi Department of Corrections in accordance with the provisions of section 97-3-117(l)(a) and section 99-19-81.
 

 ¶ 19. Lastly, Perryman contends that the verdict for the aggravated assault charge is contrary to the weight of the evidence. He points out that the aggravated assault charge detailed the usage of a knife but that the knife was not produced at trial. Accordingly, Perryman argues that the charge should be reduced to simple assault.
 

 ¶ 20. Wflien determining whether a jury’s verdict is against the overwhelming weight of the evidence, “we must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.”
 
 Walker v. State,
 
 881 So.2d 820, 831(¶ 32) (Miss.2004) (citing
 
 Hubbard v. State,
 
 819 So.2d 1192, 1196(¶ 11) (Miss.2001)). Mississippi Code Annotated section 97-3-7(2) (Supp. 2008), which defines aggravated assault, provides in pertinent part:
 

 A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
 

 ¶ 21. When a statute requires use of a deadly weapon, the failure of the State to produce the weapon is not fatal to the State’s case.
 
 Moore v. State,
 
 933 So.2d 910, 921 (¶ 38) (Miss.2006). In
 
 Moore,
 
 the defendant was charged with aggravated assault and argued that the jury’s verdict was against the overwhelming weight of evidence because the State never offered a knife or other deadly weapon into evidence.
 
 Id.
 
 at (¶ 37). The court found this argument unpersuasive and held that “the State was not required to, produce the actual tool, and the jury was free to consider its absence when weighing the evidence and making its determination.”
 
 Id.
 
 at (¶ 38). On review, the court found that the victim’s testimony about the stabbing and photographs of the victim’s neck injuries were sufficient to support the verdict
 
 *47
 
 and that “[t]he trial court did not abuse its discretion by failing to grant Moore’s motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.”
 
 Id.
 
 at (¶ 39).
 

 ¶22. Similar to the victim in
 
 Moore,
 
 Dente testified about the stabbing and that the object she was stabbed with was “shiny and sharp.” She also showed the jury the scars on her neck, which she sustained in the attack. We find that there was sufficient evidence to support the aggravated assault conviction and that the trial court did not abuse its discretion in refusing to grant a new trial. Therefore, this contention of error is without merit.
 

 ¶ 23. THE JUDGMENT OF THE CO-PIAH COUNTY CIRCUIT COURT OF CONVICTION OF COUNT ONE, CARJACKING, AND COUNT TWO, AGGRAVATED ASSAULT, IS AFFIRMED AND MODIFIED TO REFLECT SENTENCES AS A HABITUAL OFFENDER OF FIFTEEN YEARS AND A $5,000 FINE FOR COUNT ONE AND TWENTY YEARS FOR COUNT TWO, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . The Cumberland Apartments are located just behind Dente’s home.